UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DANIELLE M. VALOE,

        Plaintiff,

  v.

                            Case No. 22-cv-182-pp

ALLSTATE INSURANCE COMPANY,
JOHNATHAN PAUL, KRISTINA MALLEK
and THOMAS WILSON,

        Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTIONS TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NOS. 2, 9), SCREENING COMPLAINT AND REQUIRING PLAINTIFF TO FILE AN AMENDED COMPLAINT**

---

On February 14, 2022, the plaintiff—who is representing herself—filed a complaint, alleging that Allstate Insurance Company did not act in good faith in resolving an insurance claim that involved a third-party lienholder. Dkt. No. 1.[1] The same day, the plaintiff filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 2. A little over two weeks later, on March 3, 2022, the court received a letter from the plaintiff. Dkt. No. 5. The letter stated in pertinent part:

> On February 22nd I made an attempt to come to gain the clerk of courts signatures for the summons for the Plaintiffs[2] involved and

---

[1] The plaintiff has advised the court that the nature of her lawsuit is "contract . . . insurance." Dkt. No. 4.

[2] The court suspects that the plaintiff meant to use the word "defendants" here and in the rest of the letter—the plaintiff is the party who files the lawsuit, and the defendants are the parties that the plaintiff sues.

1

> to update the civil docket sheet. Valoe was reading the enclosed pro se instructions given by the courts in order to properly serve the plaintiff a copy of the complaint. I was informed at that time by the clerk that I had to have a hearing to decide my indigence and inability to pay and that updating the civil docket sheet was unnecessary for individuals filing pro-se. Once an indigent hearing is commenced I would either have to pay the courts to file and come back for the signatures and serve the summons on my own or that if found indigent the courts would assist the plaintiff in the above case served.

Id. The plaintiff then asked the court to update the address for defendant Allstate, "so that if the courts do find me indigent they will have the correct address on file for the plaintiff." Id.

On July 19, 2022, the court received a change-of-address letter from the plaintiff, updating her address to a post office box in Milwaukee. Dkt. No. 6. On the same day, the court received from the plaintiff a letter which appears to state that she tried to serve "all 3 defendants" with a "request for a waiver notification form," but that Allstate was refusing to answer or reply; she asked the court for help serving "all 3 defendants." Id. at 1.

On December 19, 2022, the court received a letter from the plaintiff, advising the court that her income had changed. Dkt. No. 8. She noted that she had not yet received an "indigent hearing" and reiterated that she needed help getting Allstate properly served. Id. The plaintiff attached to this letter a notice from Wisconsin's W-2 program, notifying her that she would receive a payment of $60 on December 10, 2022, a payment of $304 on January 1, 2023 and a payment of $608 on January 30, 2023. Dkt. No. 8-1 at 1.

Finally, on October 23, 2023—presumably because the court had not yet ruled on her first motion to proceed without prepaying the filing fee—the plaintiff filed a second motion seeking the same relief. Dkt. No. 9.

To allow a plaintiff to proceed without prepaying the civil case filing fee, the court first must decide whether the plaintiff can pay the fee; if not, it must screen the complaint to determine whether the lawsuit is frivolous, malicious or fails to state a claim upon which relief can be granted. 28 U.S.C. §§1915(a) and 1915(e)(2)(B)(i).

**I.    Motions to Proceed Without Prepaying the Filing Fee (Dkt. Nos. 2, 9)**

   A.    Legal Standard

An indigent federal plaintiff "may commence a civil action without prepaying fees or paying certain expenses." Coleman v. Tollefson, 575 U.S. 532, 534 (2015). To qualify to proceed without prepaying the filing fee, a plaintiff must fully disclose her financial condition, and must do so truthfully under penalty of perjury. See 28 U.S.C. §1915(a)(1) (requiring the person seeking to proceed without prepayment to submit "an affidavit that includes a statement of all assets [they] possess[]"). As the Seventh Circuit Court of Appeals has explained, "[p]roceeding [without prepaying the filing fee] is a privilege, and courts depend on the plaintiff's honesty in assessing her ability to pay." Lofton v. SP Plus Corp., 578 F. App'x 603, 604 (7th Cir. 2014); see also Chung v. Dushane, No. 03 C 5955, 2003 WL 22902561, at *2 (N.D. Ill. Dec. 9, 2003) ("The opportunity to proceed [without prepaying the filing fee] is a privilege provided for the benefit of indigent persons and the court system depends upon

3

the honesty and forthrightness of applicants to ensure that the privilege is not abused.").

B.  The Plaintiffs' Financial Status

The plaintiff's first motion to proceed without prepaying the filing fee, which the court received on February 14, 2022, listed $1,679 as her monthly income. Dkt. No. 2 at 1. The plaintiff reported that this income came from long-term disability. Id. The plaintiff stated that she had $38.97 in cash or in a checking/savings account. Id. at 2. She listed approximately $2,379 in monthly expenses, which included her rent, utilities, insurance and car payments. Id.

The plaintiff's second motion to proceed without prepaying the filing fee, which the court received on October 23, 2023, listed only $608 as her monthly income. Dkt. No. 9 at 1. This matches the amount of the W-2 payment reflected in Dkt. No. 8-1. The plaintiff represented that this income came from government assistance and that she also receives $1,115 per month in Foodshare benefits. Id. The plaintiff stated that she had $3.13 in cash or in a checking/savings account. Id. at 2. Under expenses, the plaintiff wrote, "$1375 rent but we have been evicted since October," "Geico Ins but this is now lapsed $415" and "car note $3850 back pay due/$450 monthly but up for repo." Id.

C.  Analysis

The court regrets that it took far too long in analyzing the plaintiff's motion to proceed without prepaying the filing fee. The plaintiff has been waiting a long time for the court to make a decision, and for the court to

4

provide her with the help she has requested in serving the summons and complaint. The court apologizes to the plaintiff for this unwarranted delay.

There is no requirement that the court hold a hearing to determine whether the plaintiff is indigent. The court can make that determination from looking at the documents the plaintiff has filed. Even if the court had ruled on the plaintiff's first motion promptly, it would have concluded that she did not have the ability to pre-pay the $402 civil filing fee. Certainly now that her circumstances have changed, the plaintiff does not have the ability to pay that fee. The court will grant the plaintiff's motions to proceed without prepaying the filing fee. Dkt. Nos. 2, 9.

The court advises the plaintiff, however that she is still responsible for paying the filing fee over time. Robbins v. Switzer, 104 F.3d 895, 898 (7th Cir. 1997); see also Rosas v. Roman Catholic Archdiocese of Chi., 748 F. App'x 64, 65 (7th Cir. 2019) ("Under 28 U.S.C. § 1915(a), a district court may allow a litigant to proceed 'without *prepayment* of fees,' but not without ever paying fees.") (emphasis in original). When a court grants a motion allowing a plaintiff to proceed without prepaying the filing fee, it means only that the person does not have to pre-pay the full filing fee up front; the plaintiff still owes the filing fee.

## II.     Screening the Complaint

### A.     Legal Standard

Whenever a plaintiff asks the court to allow her to proceed without prepaying the filing fee, the court must "screen" the complaint, and dismiss it if

5

it is frivolous or malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2). For a complaint to state a claim under the federal notice pleading system, it must contain a "short and plain statement of the claim" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(2)(a). A plaintiff does not need to plead every fact supporting his claims; he needs only to give the defendant fair notice of the claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). At the same time, the allegations "must be enough to raise a right to relief above the speculative level." Id. A document filed by a person who is representing [herself] must be "liberally construed," and a complaint filed by someone representing herself, "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

  B. <u>The Plaintiff's Allegations</u>

  The plaintiff alleges that the court has diversity jurisdiction under 28 U.S.C. §1332. Dkt. No. 1 at 1.

    1. *The Defendant(s)*

  The complaint sends conflicting messages about whom the plaintiff wishes to sue. On the first page of the form complaint, an instruction is pre-printed in the caption section: "Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above,

please write 'see attached' in the space and attach an additional page with the full list of names." Dkt. No. 1 at 1. In the space above that instruction, the plaintiff identified one defendant: "All State Insurance Company." Id. She did not write "see attached." It appears from the caption, therefore, that the plaintiff is suing Allstate Insurance Company.

In Section I(B) of the form complaint, however, where the plaintiff was asked to provide identifying information for each defendant, the plaintiff listed *three* defendants. Id. at 2. She identified these defendants as "Allstate Insurance Company (Johnathan Paul)," "Allstate Insurance Company (Kristina Mallek)" and "Allstate Insurance Company (Thomas Wilson)." Id. She describes Johnathan Paul as an insurance adjustor and provides an address in Northbrook, Illinois. Id. She describes Kristina Mallek as a chief insurance adjustor, and provides and address in Dallas, Texas. Id. She identifies Thomas Wilson as "CEO" and provides an address in Wilmington, Delaware. Id. One can infer from this section that the plaintiff wishes to sue three individual employees of Allstate—Paul, Mallek and Wilson.

In Section II(B)(2), "Basis for Jurisdiction," the form stated that if the defendant is a corporation, the plaintiff must provide the state under whose laws the corporation is incorporated and the state where its principal place of business is located. Id. at 3. The plaintiff identified the defendant as "Allstate Insurance Company," stated that it was incorporated under the laws of the state of Illinois and that it had its principal place of business in Illinois, but also indicated (in the field for identifying the country of incorporation for

7

corporations that are residents of foreign countries) that Allstate's principal place of business is "Wisconsin." Id. Again, it appears from this section as if the plaintiff seeks to sue Allstate Insurance Company.

Finally, in Section III, the "Statement of Claim" section of the complaint, the plaintiff wrote that she had an oral contract with "Allstate Insurance Company" dated March 5, 2021. Id. at 4. She began her statement of claim on page 4 of the complaint, then continued it on page 6, where she typed the name "JOHNATHON PAUL" in capital letters before alleging a series of facts. Id. at 4, 6.

2. *The Factual Allegations*

The plaintiff provides the background facts that led to her claims in the section of the complaint asking for the relief she is requesting. She explains that on February 17, 2021, she and other passengers were involved in a motor vehicle accident. Id. at 4. The plaintiff alleges that she "suffered greatly with excruciating pain causing her blood pressure to get out of control causing her to want to die due to the pain." Id. The plaintiff asserts that she had take off work for more than six weeks because of the accident. Id. She explains that she was "top 5 for sales every month with her company," but that since the accident she lost commission income and "fell closer to the bottom when she returned back to work." Id. The various post-accident medications prescribed to the plaintiff caused, among other symptoms, loss in bone density and liver damage. Id. The plaintiff experienced pain for over six straight months following the accident and was still experiencing symptoms at the time of filing

8

her complaint. Id. The plaintiff describes in detail the treatment she had to relieve the pain and the impact the treatment has had on her. Id. She explains that she had plans to move in 2021, but that she couldn't because of the drop in income due to the accident; she says during that time, "she was served with a 5 day eviction notice and almost became homeless due to not being able to work." Id. She also asserts that her family "expirenced [sic] significant trauma on her block," which would not have occurred if they had been able to move in 2021. Id.

Although the plaintiff explains that the accident occurred on February 17, 2021, she does not state when she filed her insurance claim. She mentions a "prior claim #0554750281," but does not explain if that claim related to the February 17, 2021 auto accident. Id. at 7. She says that someone named Jason Dain was the "previous adjuster" for claim #0554750281, and that Dain told her that she "could not get the check sent out to her for negotiations" and that "they could get sued if the lien was not paid in full." Id. plaintiff alleged that on March 5, 2021, she spoke with Johnathan Paul "to settler [sic] her claim #0578600421." Id. at 6.

The plaintiff alleges that on February 25, 2021—eight days after the auto accident—she "made a complaint about how Mr. Paul was handling her claim." Id. She asserts that Paul was "vacillating on getting" her claim resolved; she felt like Paul "was acting in bad faith towards her claim." Id. The plaintiff says that Kristina Mallek "assured that he [presumably Johnathan Paul] would receive a

complaint against him on his permanent record and that Ms. Valoe's claim would be handled better going forward." Id.

The plaintiff recounts that on March 5, 2021, the plaintiff spoke with Paul" to settler [sic] her claim #0578600421." Id. at 4. This claim number is different from the claim number the plaintiff mentioned in relation to Jason Dain; she does not explain whether this claim related to the February 17, 2021 auto accident. The plaintiff says that she "accepted the policy limit with the understanding that she was in control of negotiating with the 3rd party lienholder Benefit Recovery Group to give them a lower amount." Id. The plaintiff asserts that "[a]fter various questions from Ms. Valoe on March 5th, 2021," Paul stated "that the check was for Ms. Valoe to negotiate a smaller amount to give to the lienholder." Id. The plaintiff says that Paul told her that she could negotiate with the third-party lienholder "and they would send out a new check to both parties." Id. It appears that during the March 5, 2021 call between the plaintiff and Paul, the plaintiff asked for a lawyer; she says that "Mr. Paul assured after Ms. Valoe requested a lawyer during the call March 5th, 2021 to finish settling the case that Ms. Valoe would be in control of negotiation and would send out different checks to both parties once the negotiation was over." Id. at 7. She asserts that Paul "informed her that no lawyer was needed and that she was getting the entire amount of the check sent out to her to negotiate." Id. at 6. The plaintiff asserts that that Paul "stressed that Ms. Valoe would have the check in her hand;" she says that because she had had a prior claim with adjuster Jason Dain and he had

10

informed her that "they could not send out the check directly for her to negotiate," she felt "safe by accepting the check knowing it was hers to negotiate." Id. at 7.

The plaintiff alleges that on March 15, 2021, "Mr. Paul gave information to a 3rd party unaffiliated about Ms. Valoe's claim # 0578600421 without Ms. Valoe's permission when they called asking about her claim." Id. at 6. She explains that she was surprised by this because she assumed that her claim was private and was protected "under the consumer protection laws." Id. The plaintiff says that Paul "offered no good enough reason as to why he would give out information to the unaffiliated 3rd party on March 15th, 2021." Id.

The plaintiff says that on March 31, 2021, Darius Moore, "the lienholder for Benefit Recovery Group," told her that "they were willing to accept a lower payment." Id. at 6. She asserts that a fax was sent to the fax number provided by Darius Moore—she does not say by whom—"from the lien request" and that an email was sent to Darius Moore "as it was provided during the phone conversation between Mr. Moore and Ms. Valoe on March 31st, 2021 for the negotiation for a lower payment." Id. She says that she mailed a copy of "the letter of negotiation and payment certified mail on April 19th, 2021," and says that a copy of the payment and the letter of negotiation for Benefit Recovery Group "was sent out certified directly to Mr. Paul." Id.

The plaintiff next asserts that on April 12, 20211, Kristin Mallek "wrote a letter confirming that it was Valoe's right to negotiate and it was up to her to resolve the line with the 3rd party lienholder Benefit Recovery Group and that

11

policy limits were sent out settling the case on March 5th, 2021 when the check was presented for policy limits." Id. at 7. The plaintiff reiterates that on April 19th, 2021, she sent a payment to the third-party lienholder "via certified mail confirming Ms. Mallek's letter saying that it was up to Ms. Valoe to work with the lienholder to settle their lien." Id.

The plaintiff asserts, however, that on April 28, 2021, Paul "confirmed in an email to Ms. Valoe that he was taking the right to negotiate from Ms. Valoe and was paying the entire lien against her as it was LAW." Id. at 6. She explains that "Mr. Paul stated it was the law via email to Ms. Valoe on April 28th, 2021 as to why he was taking Ms. Valoe's right to negotiate and that by law they have to pay the entire amount to the lienholder." Id. at 7.

The plaintiff asserts that on June 3, 2021, Kristina Mallek emailed the plaintiff "stating what the amount was going to be sent out to her after Mr. Paul took Ms. Valoe's right to negotiate." Id. It appears that on June 3, Mallek "confirm[ed] a smaller check be mailed out to her via Ms. Valoe's email." Id.

The plaintiff says that on June 9, 2021, she contacted Kristina Mallek via email "asking where her check was since they voided out the original payment in order to pay the full amount to the lienholder." Id. at 6. She says that "Allstate sent Ms. Valoe the portion of the check that was forced on her taking her right to negotiate by paying the lienholder in full." Id. She explains that "Allstate has been paying Ms. Valoe a small amount of $26.62 every other week instead of sending the entire amount owed to her in full since that filing." Id.

12

The plaintiff alleges that on October 28, 2021, Paul "emailed Ms. Valoe from a demand letter she sent to Allstate to stop sending out the small $26.52 [sic] checks and send out the entire amount leftover from small payments that have been sent out from Allstate since June of 2021." Id. The plaintiff says that Paul told her that her case had been closed since June 9, 2021, that the case had been settled and that "no more funds will be sent." Id.

The first sentence of section III, "Statement of Claim," alleges that "[t]he plaintiff, (*name*) Danielle Marie Valoe, and the defendant, (*name*) Allstate Insurance Company, made an agreement or contract on (*date*) March 5th 2021. The agreement or contract was (*oral or written*) Oral." Dkt. No. 1 at 4. But in the area provided for the plaintiff to describe what the parties were required to do under that contract, the plaintiff appears to state that her oral agreement was with Johnathan Paul:

> On March 5th 2021 Ms. Valoe spoke with Mr. Paul to settler [sic] her claim for policy limit. Mr. Paul stated the check was for Ms. Valoe to negotiate with the 3rd party lein [sic] holder. Mr. Paul told Ms. Valoe that she could negotiate with the 3rd party lein [sic] holder and they would send out a new check to both parties. On April 28th 2021 Allstate voided the check for policy limits and stated to Ms. Valoe that they would be paying the full amount of the lein [sic] as ordered by law. This happened after Ms. Valoe already negotiated with the leinholder [sic] and sent them the negotiated payment. This was an oral agreement between herself and Mr. Paul from March 5th, 2021 settling[.]

Id.

In the section of the complaint provided for the plaintiff to describe how the defendant failed to comply with the contractual agreement, the plaintiff mentioned both Kristina Mallek and Johnathan Paul:

13

> On April 12th 2021 Kristina Mallek wrote a letter on behalf of Ms. Valoe saying that Allstate settled the claim for policy limits on March 5th 2021 and it was up to Ms. Valoe to satisy [sic] the lein [sic]. Ms. Valoe asserts that she was already in contact with the 3rd party leinholder [sic] who stated they would be willing to accept a lower amount via telephone conversation. Ms. Valoe sent out the payment to settle the lein [sic] before Allstate breached that oral agreement and voided the payment. Ms. Valoe is entitled to compensation for her wage losses as well as pain and suffering. Mr. Paul ordered that check be voided and sent out a full payment to the 3rd party leinholder [sic]. The plaintiff has complied with the plaintiff's obligations under the contract.

Id.

In the statement of claim, the plaintiff says that "Ms. Mallek played dirty in this game as she wrote a letter on April 12th, 2021 giving Valoe the right to negotiate then on June 3rd, 2021 confirming a smaller check be mailed out to her via Ms. Valoe's email." Id. at 7. As for Thomas Wilson, the plaintiff asserts that he "taught" these "tactics" to Allstate adjusters" to "take away civil rights of the company paying consumers to negotiate their own liens." Id. at 6-7. She asks the "higher courts to hold the CEO of Allstate Thomas Wilson accountable for teaching these dirty unfair tactics lying to their consumers for the better gain." Id. at 7.

The complaint alleges that the plaintiff has suffered several injuries as a consequence of the above-described incidents: "[d]ue to Allstate reneging on her right to negotiate Ms. Valoe and the circumstances leading up to it has gotten her diagnosed with PTSD." Id. at 4. The plaintiff says she has been "unable to work and has been considered disabled" and that she's been off work since April 2021, and that she "feared jail time for negotiating her own claim due to Mr. Paul's revenge." Id. She says that Allstate "did this to her

14

mental health has made her disabled and now is unable to work," that she has lost "a lot," has been humiliated, that her income decreased and she has "found her foundation falling apart." Id. at 7. She asserts that she was "trapped in this cycle where one adjuster in two different cases told her something conflicting." Id. She seeks $300 million in damages, and asks the court to "have Allstate send the entire full amount instead of the $26.62 biweekly payments." Id.

C. Analysis

Under Wisconsin law, a plaintiff seeking to state a claim for breach of contract must assert facts showing three elements: "(1) the existence of a contract; (2) a breach of the contract; and (3) damages from the breach." Gallo v. Mayo Clinic Health System-Franciscan Med. Ctr., Inc., 907 F.3d 961, 965 (7th Cir. 2018). "A valid contract requires an offer and acceptance, meeting of the minds between the parties with respect to the essential terms of the agreement and an intention by the parties to be bound by the agreement, and payment of consideration." Joe Panos, Inc. v. Panagiotopoulus, Case No. 22-CV-656, 2022 WL 20690783, at *4 (E.D. Wis. Dec. 21, 2022) (citations omitted). The same is true for an enforceable oral contract—"there must be an offer, an acceptance, and consideration to support the formation of a legally enforceable agreement." Id. (citing Taylor v. Gordon Flesch Co., 793 F.2d 858, 862 (7th Cir. 1986)).

The plaintiff alleges that she had an oral contract to allow her to perform her own negotiations with the third-party lienholder. But she has not alleged

the requirements for an oral contract—an offer, acceptance, a meeting of the minds or consideration. Rather, she alleges that Johnathan Paul made a representation to her that he later (apparently with the help of Kristina Malleck) went back on, or retracted. The plaintiff has not alleged sufficient facts to support a claim that she had an oral contract with Paul, Mallek or Allstate. And the plaintiff has alleged no facts regarding a contractual relationship with CEO Thomas Wilson. She makes only the unsupported, conclusory allegation that Wilson teaches Allstate adjusters to use improper tactics. Although courts accept the well-pleaded facts of a complaint as true, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)).

The plaintiff's claims sound more like claims of fraud than they do claims of breach of contract. Fraud claims are difficult to allege in federal court; they are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to "describe the 'who, what, when, where, and how' of the fraud." Pullins v. Reuters News & Media, Inc., No. 22-1711, 2023 WL 1514414, at *1 (7th Cir. Feb. 3, 2023). The plaintiff has provided a lot of detail in her complaint; perhaps she will be able to state a claim for fraud against one or more of the four people or entities she has named in the complaint—Allstate, Paul, Mallek and Wilson. The court will give the plaintiff the opportunity to amend her complaint to try to do so.

16

**III. Miscellaneous**

If the plaintiff decides to try to amend her complaint, there are several things she should keep in mind. First, an amended complaint takes the place of, or "supersedes," the original complaint. Flanner v. Recording Indus. Ass'n of Am., 354 F.3d 632, 638 n.1 (7th Cir. 2004). That means that the plaintiff must include in the amended complaint *all* of the facts supporting her claims; she cannot simply tell the court to go back and look at what she alleged in her original complaint.

Second, the plaintiff should clearly identify the corporations or people whom she believes defrauded her. She must list each corporation or person she wishes to sue in the caption of the amended complaint (at the top of the first page). Simply discussing a corporation or person in the statement of claim does not suffice to identify a defendant.

Third, if the plaintiff files an amended complaint by the deadline the court sets below, the court will "screen" it. The plaintiff is not required to do anything until the court has screened the complaint and decided whether it states any claims, and against which defendants. The plaintiff need not—in fact, *must* not—try to serve the defendants herself. She must wait until the court has issued a "screening order" identifying which claims may proceed and against which defendants.

Fourth, because the court has granted the plaintiff's motion to proceed without prepaying the filing fee, the plaintiff is not required to serve any defendants against whom the court allows her to proceed. She will not need to

obtain summonses or figure out how to serve defendants. The court will arrange for service on any defendants against whom the court allows the plaintiff to proceed.

Finally, if the plaintiff needs more time to amend her complaint, she must file a motion with the court *before* the amendment deadline expires, asking for an extension of time. If the court does not receive either an amended complaint or a motion for an extension of time by the deadline the court sets below, the court will dismiss the original complaint—and the case—for failure to state a claim upon which relief may be granted.

The court is sending with this order a blank amended complaint form. The plaintiff must use this form in preparing her amended complaint. She must put the case number for this case—Case No. 22-cv-182—in the space provided for a case number. The plaintiff should use the spaces on pages 3 and 4 to recite the facts of her claims; if that is not enough space, she may use up to three additional, double-spaced pages. Again, the amended complaint must be complete in itself. It may not refer the court back to allegations in the original complaint.

### IV. Conclusion

The court **GRANTS** the plaintiff's motions for leave to proceed without prepaying the filing fee. Dkt. Nos. 2, 9.

The court **ORDERS** that if the plaintiff wishes to proceed with this case, she must file an amended complaint that complies with the instructions in this order no later than the end of the day on **January 12, 2024**. The plaintiff must

file the amended complaint in time for the court to *receive* it by the end of the day on January 12, 2024. If the court does not receive an amended complaint, or a motion asking for additional time to file one, by the end of the day on January 12, 2024, the court will dismiss this case for failure to state a claim upon which this federal court can grant relief.

Dated in Milwaukee, Wisconsin this 14th day of November, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**